1

2

3

4

5

6

7

8          **IN THE UNITED STATES DISTRICT COURT**

9          **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   HEIDI C. TATE,                          No. 2:12-cv-2420-JAM-CMK

12              Plaintiff,

13        vs.                                <u>FINDINGS AND RECOMMENDATION</u>

14   COMMISSIONER OF SOCIAL
     SECURITY,
15
                Defendant.
16   _____/

17              Plaintiff, who is proceeding without counsel, brings this action for judicial review

18   of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g).  Pending

19   before the court are plaintiff's motion for summary judgment (Docs. 12, 22) and defendant's

20   cross-motion for summary judgment (Doc. 25).

21                        **I.  PROCEDURAL HISTORY**

22              Plaintiff applied for social security benefits on March 24, 2009, with a protective

23   filing date of March 13, 2009, alleging an onset of disability on July 1, 2000, due to disabilities

24   including disorders of the back and affective mood disorder. (Certified administrative record

25   ("CAR") 69-70, 74-75, 129-38, 169-81).  Plaintiff's claim was denied initially and upon

26   reconsideration.  Plaintiff requested an administrative hearing, which was held on November 3,

2010, before Administrative Law Judge ("ALJ") Carol L. Buck.  In a April 20, 2011, decision,

the ALJ concluded that plaintiff is not disabled[1] based on the following findings:

> 1.   The claimant meets the insured status requirements of the Social Security Act through September 30, 2006.
>
> 2.   The claimant engaged in substantial gainful activity since September 2010 (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).
>
> 3.   The claimant has the following severe impairments: left shoulder pain due to degenerative joint disease; neck pain due to degenerative disc disease of the cervical spine; mild scoliosis; bilateral carpal tunnel syndrom; depression; history of cannabis abuse (20 CFR 404.1520(c) and 416.920(c)).

---

[1]   Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income ("SSI") is paid to disabled persons with low income.  42 U.S.C. § 1382 et seq.  Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

4.   The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR  404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.   After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to carry 5 pounds frequently and 10 pounds occasionally; stand or walk for 4 hours total out of an 8-hour workday with breaks every 2 hours; no climbing ladders, ropes of scaffolds; no overhead work with the left upper extremity; no sustained prolonged motion of the neck; and mentally limited to unskilled work due to her history of cannabis abuse and depression.

6.   The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.   The claimant was born on December 20, 1963 and was 36 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.   The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.   Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11.  The claimant has not been under a disability, as defined in the Social Security Act, from July 1, 2000, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

After the Appeals Council declined review on August 2, 2012, this appeal followed.

## II.  STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521

1  (9th Cir. 1996).  It is "such evidence as a reasonable mind might accept as adequate to support a

2  conclusion."  Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole, including

3  both the evidence that supports and detracts from the Commissioner's conclusion, must be

4  considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v.

5  Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the Commissioner's

6  decision simply by isolating a specific quantum of supporting evidence.  See Hammock v.

7  Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative

8  findings, or if there is conflicting evidence supporting a particular finding, the finding of the

9  Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

10  Therefore, where the evidence is susceptible to more than one rational interpretation, one of

11  which supports the Commissioner's decision, the decision must be affirmed, see Thomas v.

12  Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal

13  standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th

14  Cir. 1988).

## III.  DISCUSSION

16          To achieve uniformity of decisions, the Commissioner has promulgated

17  regulations which contain, inter alia, a five-step sequential disability evaluation to determine

18  whether a claimant is physically and/or mentally disabled.  (20 C.F.R. §§ 404.1520 (a)-(f) and

19  416.920(a)-(f).)   If during any point of this review, it is determined that the claimant is not

20  disabled, the claim is not to be considered further.  (20 C.F.R. §§ 404.1520(a) and 416.920(a).)

21  The five-step process is summarized as follows:

22          1.      Determination of whether the claimant is engaged in substantial gainful activity,
                    and if so engaged, the claimant is not presumed disabled and the analysis ends;
23
24          2.      If not engaged in substantial gainful activity, determination of whether the
                    claimant has a severe impairment; if the claimant does not, the claimant is not
25                  presumed disabled and the analysis ends;

26  / / /

3.      If the claimant has a severe impairment, determination of whether any such severe impairment meets any of the impairments listed in the regulations;[2] if the claimant does have such an impairment, the claimant is disabled and the analysis ends;[3]

4.      If the claimant's impairment is not listed, determination of whether the impairment prevents the claimant from performing his or her past work;[4] if the impairment does not, the claimant is not presumed disabled and the analysis ends; and

5.      If the impairment prevents the claimant from performing his or her past work, determination of whether the claimant can engage in other types of substantial gainful work that exist in the national economy;[5] if the claimant can, the claimant is not disabled and the analysis ends.

To qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months.  (42 U.S.C. § 1382c(a)(3)(A).)  A claimant must show that he or she has a physical or mental impairment of such severity that he or she is unable to do his or her previous work and cannot, considering his or her age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  (Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989).)

The claimant has the initial burden of proving the existence of a disability within the meaning of the Act.  (Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).)  The claimant

---

[2]      See 20 C.F.R. Pt. 404, Subpt. P, App. 1.

[3]      If a claimant is found to have an impairment which meets or equals one of the listed impairments, a conclusive presumption of disability applies and the claimant is entitled to benefits.  (See Marcia v. Sullivan, 900 F.2d 172, 174  (9th Cir. 1990) (citing Williams v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987); Key  v. Heckler, 754 F.2d 1545, 1548 (9th Cir. 1985).)

[4]      At this stage of the analysis, the ALJ should consider the demands of the claimant's past work as compared with his or her present capacity.  (Villa v. Heckler, 797 F.2d 794, 797 (9th Cir. 1986) (citations omitted); 20 C.F.R. § 416.945(a).)

[5]      At this stage of the analysis, the ALJ should consider the claimant's residual functional capacity and vocational factors such as age, education and past work experience.  (20 C.F.R. §§ 404.1520(f) and 416.920(f).)

1   establishes a prima facie case of disability by showing that a physical or mental impairment

2   prevents him from engaging in his previous occupation (steps 1 through 4 noted above).  (Gallant

3   v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f).)

4   However, once the claimant establishes a prima facie case of disability, the burden of going

5   forward with the evidence shifts to the Commissioner.  (Burkhart v. Bowen, 856 F.2d 1335, 1340

6   (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986);  see Hammock v.

7   Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).)  The Commissioner has the burden to

8   establish the existence of alternative jobs available to the claimant, given his or her age,

9   education, and medical-vocational background (step 5 noted above). In an appropriate case, the

10  Secretary may meet this burden through application of the medical-vocational guidelines set forth

11  in the regulations.[6]  (See 20 C.F.R. Pt. 404, Subpt. P, App. 2; Heckler v. Campbell, 461 U.S. 458

12  (1983); Olde v. Heckler, 707 F.2d 439, 440 (9th Cir. 1983).)  If the guidelines do not accurately

13  describe a claimant's limitations, the Commissioner may not rely on them alone to show

14  availability of jobs for the claimant.  (See Desrosiers v. Secretary, 846 F.2d 573, 577 (9th Cir.

15  1988).)[7]

16          In her motion for summary judgment, plaintiff appears to be claiming the ALJ

17  erred in three ways: (1) finding she had engaged in substantial work; (2) finding plaintiff not

18  credible; and (3) the evaluation of the medical evidence.  She also argues new evidence was not

19  _____

20  [6]      For any given combination of factors (residual functional capacity, age, education, and work experience), the guidelines direct a conclusion of disability or nondisability when they accurately describe a claimant's particular limitations.

21

22  [7]      However, the mere allegation of the presence of a non-exertional impairment is not sufficient to preclude application of guidelines.  Such non-exertional impairment must be

23  found to significantly limit the range of work permitted by a claimant's exertional limitations before the Commissioner will be required to obtain expert vocational testimony regarding the availability of other work.  (See, e.g., Polny v. Bowen,  864 F.2d 661, 663 (9th Cir. 1988);

24  Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Razey v. Heckler, 785 F.2d 1426, 1430 (9th Cir. 1986) (modified 794 F.2d 1348 (1986)); Perminter v. Heckler, 765 F.2d 870, 872 (9th

25  Cir. 1985).)  Pain has been recognized as a non-exertional limitation which can significantly limit ability to perform basic work skills.  (See Perminter v. Heckler, 765 F.2d 870, 872 (9th Cir.

26  1985).)

1  considered that supports her claim.

2          A.      SUBSTANTIAL WORK

3          To the extent plaintiff argues the ALJ erred in finding she engaged in substantial

4  work, this argument lacks a factual basis.  In the first part of the evaluation of plaintiff's claim,

5  the ALJ stated:

6               The claimant testified that after the alleged onset date, she returned
               to work as an assistant cook at a senior nutrition center in
7               September 2010.  She has been working on a schedule of five and
               one-half hours per day for five days per week.  She earns $9.38 per
8               hour (which amounts to $1,050 per month).  The amount of her
               work and her earnings constitute substantial gainful activity.
9               Therefore, she has been engaging in substantial gainful activity
               since September 2010.
10 (CAR 23).

11         Plaintiff argues this analysis is erroneous because she only returned to work for

12 four months, on a part-time basis, which caused her condition to worsen.

13         If the ALJ had found plaintiff not disabled based on her engaging in substantial

14 gainful activity, plaintiff's argument may have a basis.  However, after finding plaintiff had been

15 engaging in substantial gainful activity, the ALJ went through the remainder of the five-step

16 analysis of plaintiff's claims. As the ALJ did not stop the analysis at the first step based on

17 plaintiff's employment after her alleged onset date, there is no basis for this claim of error.

18         B.      CREDIBILITY

19         Plaintiff also agues that the ALJ erroneously found her claims of shoulder pain to

20 be less than credible, and that the medical evidence suggests otherwise.

21         The Commissioner determines whether a disability applicant is credible, and the

22 court defers to the Commissioner's discretion if the Commissioner used the proper process and

23 provided proper reasons.  See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996).  An explicit

24 credibility finding must be supported by specific, cogent reasons.  See Rashad v. Sullivan, 903

25 F.2d 1229, 1231 (9th Cir. 1990).  General findings are insufficient.  See Lester v. Chater, 81 F.3d

26 821, 834 (9th Cir. 1995).  Rather, the Commissioner must identify what testimony is not credible

1    and what evidence undermines the testimony.  See id.  Moreover, unless there is affirmative

2    evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not

3    credible must be "clear and convincing."  See id.; see also Carmickle v. Commissioner, 533 F.3d

4    1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007),

5    and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

6          If there is objective medical evidence of an underlying impairment, the

7    Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely

8    because they are unsupported by objective medical evidence.  See Bunnell v. Sullivan, 947 F.2d

9    341, 347-48 (9th Cir. 1991) (en banc).  As the Ninth Circuit explained in Smolen v. Chater:

> 10         The claimant need not produce objective medical evidence of the
> [symptom] itself, or the severity thereof.  Nor must the claimant produce
> 11    objective medical evidence of the causal relationship between the
> medically determinable impairment and the symptom.  By requiring that
> 12    the medical impairment "could reasonably be expected to produce" pain or
> another symptom, the Cotton test requires only that the causal relationship
> 13    be a reasonable inference, not a medically proven phenomenon.

14    80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799

15    F.2d 1403 (9th Cir. 1986)).

16          The Commissioner may, however, consider the nature of the symptoms alleged,

17    including aggravating factors, medication, treatment, and functional restrictions.  See Bunnell,

18    947 F.2d at 345-47.  In weighing credibility, the Commissioner may also consider: (1) the

19    claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent

20    testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a

21    prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5)

22    physician and third-party testimony about the nature, severity, and effect of symptoms.  See

23    Smolen, 80 F.3d at 1284 (citations omitted).  It is also appropriate to consider whether the

24    claimant cooperated during physical examinations or provided conflicting statements concerning

25    drug and/or alcohol use.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).  If the

26    claimant testifies as to symptoms greater than would normally be produced by a given

1  impairment, the ALJ may disbelieve that testimony provided specific findings are made.  See
2  Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

3          Regarding reliance on a claimant's daily activities to find testimony of disabling
4  pain not credible, the Social Security Act does not require that disability claimants be utterly
5  incapacitated.  See Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989).  The Ninth Circuit has
6  repeatedly held that the " mere fact that a plaintiff has carried out certain daily activities . . . does
7  not . . .[necessarily] detract from her credibility as to her overall disability."  See Orn v. Astrue,
8  495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Heller, 260 F.3d 1044, 1050 (9th Cir.
9  2001)); see also Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986) (observing that a claim
10  of pain-induced disability is not necessarily gainsaid by a capacity to engage in periodic restricted
11  travel); Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (concluding that the claimant
12  was entitled to benefits based on constant leg and back pain despite the claimant's ability to cook
13  meals and wash dishes); Fair, 885 F.2d at 603 (observing that "many home activities are not
14  easily transferable to what may be the more grueling environment of the workplace, where it
15  might be impossible to periodically rest or take medication").   Daily activities must be such that
16  they show that the claimant is "able to spend a substantial part of his day engaged in pursuits
17  involving the performance of physical functions that are transferable to a work setting."  Fair,
18  885 F.2d at 603.  The ALJ must make specific findings in this regard before relying on daily
19  activities to find a claimant's pain testimony not credible.  See Burch v. Barnhart, 400 F.3d 676,
20  681 (9th Cir. 2005).

21          As to plaintiff's credibility, the ALJ found:

22     The claimant has alleged disability due to neck pain, back pain, and
       upper extremity pain. She reports more pain with sitting and less
23     pain when standing and walking. She needs to change position
       when sitting. She needs to lay down three times per day. She also
24     alleges she is limited by depression. The undersigned has also
       considered a third party report by the claimant's friend/landlord,
25     Betty Lazaro (Exhibit 8E). She reports that the claimant is limited
       due to pain and has difficulty sitting for long periods.

26

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements and third party statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment. The medical evidence does not support the degree of pain and mental limitations alleged by the claimant.

The claimant's allegations of disability due to her pain, particularly her shoulder pain, is less than credible in light of her demonstrated full time work since September 2010. Further, she has been able to independently operate a motor vehicle and drives to work daily.

The claimant's sincerity is called into doubt regarding her substance abuse. She told a consulting psychologist in June 2009 that she had no[] history of substance abuse (Exhibit 6F/5). However, the record amply documents her history of cannabis abuse.

. . .

The claimant has not generally received the type of medical treatment one would expect for a totally disabled individual. The claimant's course of treatment since her alleged disability onset date has generally reflected a conservative approach. Even though she was hospitalized in July 2010, due to psychosis apparently linked to her cannabis abuse, she quickly improved thereafter. There is no other emergent or hospital treatment. Indeed, as of August 9, 2010, she was looking for a job and by September 2010, she has began work and has continued to work at her current job (Exhibit 19F/26).

The record does not show that the claimant requires any special accommodations (e.g., special breaks or positions) to relieve her pain or other symptoms.

In contrast to the allegations of the claimant's fatigue and weakness, she does not exhibit any significant atrophy, loss of strength, or difficulty moving that are indicative of severe and disabling pain.

Although the claimant has been prescribed and has taken appropriate medications for the alleged impairments, which weighs in her favor, the objective medical evidence shows that the medications have been relatively effective in controlling the claimant's symptoms. Moreover, the claimant has not alleged any side effects from the use of medications.

///

10

1     While the claimant has complained of difficulty due to pain, there
2     is no evidence of loss of weight due to loss of appetite due to pain
     or depression.

3     There is no evidence of cognitive deficits due to pain or
4     depression.  Mental status examinations do not reveal cognitive
     deficits.

5     Consequently, the claimant's allegations are not credible to
6     establish a more restricted residual functional capacity than that
     found above.

7 (CAR 24-25).

8     Plaintiff objects to the ALJ's determination that severity of her complaints were

9 not credible.  She argues the ALJ's reference to substance abuse is untrue, and that she

10 continually complained of pain, especially shoulder pain.

11     The ALJ provided several reasons for discounting plaintiff's complaints of pain

12 and severity of her condition.  The reasons articulated by the ALJ, as set forth above, are clear

13 and convincing. These reasons, including plaintiff's inconsistent statements regarding her

14 cannabis use, the limited conservative relatively effective treatment received, lack of atrophy, and

15 no loss of strength or difficulty moving, are appropriate considerations which are supported by

16 the record.  As the ALJ states, plaintiff told the consultative psychological examiner she did not

17 use marijuana, yet test results indicate otherwise as did her statements to FNP Potter. (CAR 418-

18 20, 536, 578-80).  The treatment she received, including chiropractic care, acupuncture,

19 ibuprofen, and Prozac, are all fairly conservative treatment options and there is support in the

20 record indicating the treatment was relatively effective.  In addition, upon physical examination,

21 the consultative examiner found plaintiff lacked any significant atrophy, has limited if any loss of

22 strength, and had no difficulty moving. (CAR 423-24). The ALJ's reliance on these findings to

23 support her determination that plaintiff's pain may not be as severe as plaintiff indicates are all

24 reasonable and supported by the record.

25     While some evidence may be subject to alternate interpretations, the court may

26 not simply substitute it's own opinion.  The ALJ's interpretation of the evidence is not erroneous,

1  is supported by the record, and giving proper deference to the ALJ's determination, the

2  credibility finding should be affirmed.  See Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir.

3  2002).

4           D.      MEDICAL EVIDENCE/OPINIONS

5           Plaintiff argues the medical evidence and opinions support her claim of disability,

6  and the ALJ ignored or misinterpreted the evidence.

7           The weight given to medical opinions depends in part on whether they are

8  proffered by treating, examining, or non-examining professionals.  See Lester v. Chater, 81 F.3d

9  821, 830-31 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating

10  professional, who has a greater opportunity to know and observe the patient as an individual,

11  than the opinion of a non-treating professional.  See id.; Smolen v. Chater, 80 F.3d 1273, 1285

12  (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).  The least weight is given

13  to the opinion of a non-examining professional.  See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4

14  (9th Cir. 1990).

15           In addition to considering its source, to evaluate whether the Commissioner

16  properly rejected a medical opinion the court considers whether:  (1) contradictory opinions are

17  in the record; and (2) clinical findings support the opinions.  The Commissioner may reject an

18  uncontradicted opinion of a treating or examining medical professional only for "clear and

19  convincing" reasons supported by substantial evidence in the record.  See Lester, 81 F.3d at 831.

20  While a treating professional's opinion generally is accorded superior weight, if it is contradicted

21  by an examining professional's opinion which is supported by different independent clinical

22  findings, the Commissioner may resolve the conflict.  See Andrews v. Shalala, 53 F.3d 1035,

23  1041 (9th Cir. 1995).  A contradicted opinion of a treating or examining professional may be

24  rejected only for "specific and legitimate" reasons supported by substantial evidence.  See Lester,

25  81 F.3d at 830.  This test is met if the Commissioner sets out a detailed and thorough summary of

26  the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a

1    finding.  See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989).  Absent specific and

2    legitimate reasons, the Commissioner must defer to the opinion of a treating or examining

3    professional.  See Lester, 81 F.3d at 830-31.  The opinion of a non-examining professional,

4    without other evidence, is insufficient to reject the opinion of a treating or examining

5    professional.  See id. at 831.  In any event, the Commissioner need not give weight to any

6    conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d 1111,

7    1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion);

8    see also Magallanes, 881 F.2d at 751.

9             As to the medical opinions and evidence, the ALJ stated:

10            As for the opinion evidence, I have given some weight to the State
              agency medical consultant assessment of L. DeSouza, M.D.,
11            contained in his assessment dated December 28, 2009 (Exhibit
              15F). Dr. DeSouza opined that the claimant was restricted to lift or
12            carry 10 pounds frequently and 20 pounds occasionally; stand or
              walk for 6 hours total out of an 8-hour workday; occasional
13            overhead reaching with both upper extremities. I have discounted
              Dr. DeSouza's opinion regarding the claimant's manipulative
14            limitations as there is no evidence of bilateral upper extremity
              impairment. Rather, the record contains evidence to support an
15            impairment limited to her left shoulder. Indeed, the claimant did
              not testify to symptoms or limitations affecting her right upper
16            extremity. Therefore, she should only be restricted from overhead
              work with the left upper extremity.
17
              I have considered the June 2009 opinion by Elaine McCausland,
18            Ph.D., that the claimant is unable to work (Exhibit 6F). By
              regulation, opinions that the claimant is "disabled" or "unable to
19            work" are not entitled to any special significance, even when
              offered by a treating physician. (20 C.F.R. §§ 404.1527(3)(3), and
20            (Social Security Ruling 96-5p). Further, her opinion fails to specify
              the claimant's mental functional limitations. Her opinion is not
21            supported by progress notes from her mental health providers that
              show that the claimant's depression has improved with appropriate
22            treatment. Further, her treating sources do not support the
              diagnostic impressions indicated by Dr. McCausland such as major
23            depression, moderate; panic disorder with agoraphobic traits;
              cognitive disorder; and psychological factors affecting medical
24            condition.

25            I give little weight to the State agency psychological assessment by
              Normal Zukowsky, Ph.D., dated June 20, 2009, in which he found
26            that the claimant is limited to simple to moderately complex duties

13

in a low-stress, nonpublic setting with minimal interactions with others. Progress notes reveal that when she takes her medications as prescribed, she experiences improvement of her depression. Further, Dr. Zukowsky's limitations regarding others is not supported by the record and the claimant has not reported difficulty getting along with others.

In sum, the above residual functional capacity assessment is partially supported by the State agency assessment by Dr. DeSouza (Exhibit 15F). I have also added the restriction against any repetitive movement from the neck from the report by Michael A. Sommer, M.D., dated July 30, 2001 (Exhibit 5F/11). Dr. Sommer evaluated the claimant in connection with her worker's compensation claim. Additionally, as indicated above, I rejected Dr. DeSouz[a]'s opinion of limitation on bilateral upper extremity overhead reaching. Rather, I restricted overhead reaching only with the left upper extremity. On the other hand, I took into account the claimant's neck and both upper extremities so that the claimant should avoid sustained prolonged motion of the neck.

From a mental standpoint, I have taken into consideration the claimant's combined mental impairments. I have taken into account that the prescribed medications have improved her depressive symptoms. Indeed, the record does not indicate ongoing severe mental symptoms that would preclude work. Further, it is noteworthy that she has not reported difficulty getting along with others. Therefore, she is limited to unskilled work.

(CAR 25-26).

Plaintiff argues the ALJ erred in finding her depression well controlled and only limiting her left shoulder movement. As to those two conditions, the ALJ found limited evidence in plaintiff's treatment records to support the consulting examiner's diagnosis of major depression and limitations as to plaintiff's right shoulder.

In June 2009, plaintiff was evaluated by Dr. McCausland, who determined plaintiff suffered from major depression, moderate, and panic disorder. (CAR 418-20). Dr. McCausland opined that plaintiff is likely to have difficulty maintaining employment and appropriate relationships with others, due to her depression, but that she has been capable of maintaining appropriate relationships in the past. As the ALJ noted, however, this opinion was prior to plaintiff obtaining any treatment for her depression. There is limited if any reference to depression prior to this evaluation. Following the psychological evaluation, plaintiff was seen by

14

1  her family nurse practitioner, Christina Potter, in August 2009, for her depressed mood.  FNP

2  Potter prescribed Celexa, which helped improve her mood and sleep. (CAR 536-39).  She then

3  was hospitalized in June 2010 for psychosis. (CAR 570-80) The ALJ addressed this, noting that

4  with a change in her medication, by August 2010, plaintiff was reported doing really well. (CAR

5  496).

6       These findings are supported by the record as a whole.  As the ALJ noted, there is

7  limited treatment for plaintiff's depression, which appears to have been relatively effected.  The

8  ALJ provided sufficient reason for discounting Dr. McCausland's opinion, and the ALJ's

9  determination as to plaintiff's mental impairment is generally supported by the record.

10      In addition to plaintiff's depression, she argues the ALJ erred in her determination

11  that only her left shoulder movement is limited.  She argues that her pain includes her right

12  shoulder which is limited as well.

13      There are limited medical opinions in the record. No treating source provided an

14  opinion as to plaintiff's abilities and limitations. Only the consultative examiners and the state

15  agency physicians provided such opinions. There are, however, progress notes from plaintiff's

16  treating physicians, which are generally supportive of the findings made by the ALJ. In addition

17  to those cited by the ALJ, plaintiff's workers' compensation physician, Dr. Shapiro, noted as far

18  back as July 2001 that plaintiff's treatment was conservative and that plaintiff was opposed to

19  surgery or more invasive medical treatment. (CAR 390).  Thus, there is generally medical

20  support for the ALJ's determination that only the left shoulder is impaired, especially given the

21  inclusion of limitations of plaintiff's neck and the credibility determination as to plaintiff's pain

22  as set forth above.

23      However, the ALJ did not specifically address the neurological evaluation by Dr.

24  Bacchus. (CAR 423-24).  Dr. Bacchus stated that plaintiff reported persistent pain extending into

25  both shoulders.  Upon examination, plaintiff had tenderness throughout the paracervical region,

26  shoulder girdle, and both upper extremities and limitation of neck motion in all four directions.

1   Although there was no obvious atrophy, fasciculations, or trophic changes throughout, and no

2   evidence of neurological deficits.  The ALJ failed to address this examination in her opinion.

3   While there may be sufficient evidence in the record to support the ALJ's determination that only

4   plaintiff's left shoulder was limited, she erred in failing to address Dr. Bacchus' examination and

5   determination that both of plaintiff's shoulders were impacted by pain.  As stated above, absent

6   specific and legitimate reasons, the ALJ is to defer to a treating or examining physician's

7   opinion. Failure to address an examining physician's findings is reversible error.

8          As to plaintiff's argument regarding new evidence submitted after the ALJ's

9   decision, such evidence does not meet the requirements for remand based on submission of new

10  evidence.  A case may be remanded to the agency for the consideration of new evidence if the

11  evidence is material and good cause exists for the absence of the evidence from the prior record.

12  See Sanchez v. Secretary of Health and Human Services, 812 F.2d 509, 511-12 (9th Cir. 1987)

13  (citing 42 U.S.C. § 405(g)).  In order for new evidence to be "material," the court must find that,

14  had the agency considered this evidence, the decision might have been different.  See Clem v.

15  Sullivan, 894 F.2d 328, 332 (9th Cir. 1990).  The court need only find a reasonable possibility

16  that the new evidence would have changed the outcome of the case.  See Booz v. Secretary of

17  Health and Human Services, 734 F.2d 1378, 1380-81 (9th Cir. 1984).  The new evidence,

18  however, must be probative of the claimant's condition as it existed at or before the time of the

19  disability hearing.  See Sanchez 812 F.2d at 511 (citing 42 U.S.C. § 416(i)(2)(G)).  In Sanchez,

20  the court concluded that the new evidence in question was not material because it indicated "at

21  most, mental deterioration after the hearing, which would be material to a new application, but

22  not probative of his condition at the hearing."  Id. at 512 (citing Ward v. Schweiker, 686 F.2d

23  762, 765-66 (9th Cir. 1982)).

24          Here, the new evidence plaintiff presents does not support her position that the

25  ALJ erred. If anything, it adds additional support to the ALJ's finding that only her left side is

26  impacted.  To the extent she argues she sustained additional injury in 2011, such an injury may

16

be material to a new application, but would not have been material to her condition at the time of the hearing.  Therefore, the undersigned finds the new evidence plaintiff submitted does not meet the requirements for remand.

### IV.  CONCLUSION

Based on the foregoing, the undersigned finds the ALJ's failure to address Dr. Bacchus' examination of plaintiff is reversible error, and will recommend this matter be remanded under sentence four of 42 U.S.C. § 405(g) for further development of the record and/or further findings addressing the deficiencies noted above.

Accordingly, the undersigned recommends that:

1.     Plaintiff's motion for summary judgment (Doc. 12, 22) be granted;

2.     Defendant's cross-motion for summary judgment (Doc. 25) be denied;

3.     This matter be remanded for further proceedings consistent with this order; and

4.     The Clerk of the Court be directed to enter judgment and close this file.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of objections.  Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).


DATED:  August 21, 2014


_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE